D. BARCLAY EDMUNDSON (State Bar No. 089481)
bedmundson@orrick.com
VALERIE M. GOO (State Bar No. 187334)
vgoo@orrick.com
SETH E. FREILICH (State Bar No. 217321)
sfreilich@orrick.com
DIMITRIOS V. KOROVILAS (State Bar No. 247230)
dkorovilas@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for Defendant
NETWORK SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS McELROY and TODD MATZKE, individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NETWORK SOLUTIONS LLC, a Delaware Limited Liability Company, INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, a California non-profit Corporation; and DOES 1 through 10, inclusive;<br><br>        Defendants. | Case No.  CV 08-01247 PSG (VBKx)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(3) and 12(b)(1), OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1406(a) FOR IMPROPER VENUE**<br><br>Date:   June 23, 2008<br>Time:  1:30 p.m.<br>Judge: Philip S. Gutierrez<br><br>[Filed Concurrently with Notice of Motion and Motion; Declaration of Natalie Sterling; Request for Judicial Notice; and [Proposed] Order] |

OHS West:260448703.1

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.    FACTS........................................................................................................ 2

    A.     Defendant Network Solutions and the Domain Name System............. 2

    B.     Plaintiffs Agreed To The Terms of Network Solutions' Service
    Agreement and Forum Selection Clause ............................................... 3

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FED. R.
    CIV. P. 12(B)(3) DUE TO IMPROPER VENUE........................................... 4

    A.     Rule 12(b)(3) Mandates Dismissal ....................................................... 4

    B.     Plaintiffs' Claims All Fall Within The Scope Of The Forum
    Selection Clause..................................................................................... 5

    C.     The Forum Selection Clause Is Valid and Enforceable........................ 7

        1.     Federal Law *Presumes* Forum Selection Clauses to be
        Valid and Strongly Favors Their Enforcement ........................ 7

        2.     Plaintiffs Cannot Meet the Heavy Burden of Showing that
        an Exception Applies................................................................. 8

           a. Enforcement of the Forum Selection Clause is Not
           Unjust........................................................................................ 8

        3.     The Forum Selection Clause was Not Obtained by Fraud ....... 10

IV.    THE COURT SHOULD ALSO DISMISS THE CASE DUE TO
    LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO
    RULE 12(B)(1) ............................................................................................ 11

V.     IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER
    THIS ACTION TO VIRGINIA ................................................................... 11

VI.    CONCLUSION ........................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Argueta* v. *Banco Mexicano*,
   87 F.3d 320 (9th Cir. 1996) ............................................................. 4, 5

*Batchelder* v. *Kawamoto*,
   147 F.3d 915 (9th Cir. 1998) ............................................................. 10

*Bremen* v. *Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ............................................................................ 7, 8

*Carnival Cruise Line, Inc.* v. *Shute*,
   499 U.S. 585, 11 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ..................... 9

*Chateau des Charmes Wines Ltd.* v. *Sabate USA, Inc.*,
   2002 WL 413463 (N.D. Cal. Mar. 12 2002), *rev'd on other grounds*, 328
   F.3d 528 (9th Cir. 2003) ...................................................................... 6

*Coastal Steel Corp.* v. *Tilghmann Wheelabrator, Ltd.*,
   709 F.2d 190 (3d Cir. 1983) ................................................................. 5

*DeJohn* v. *The TV Corp. Int'l*,
   245 F. Supp. 2d 913 (N.D. Ill. 2003) ................................................... 10

*Docksider, Ltd.* v. *Sea Tech., Ltd.*,
   875 F.2d 762 (9th Cir. 1989) ............................................................... 11

*Fireman's Fund Ins. Co.* v. *M.V. DSR Atlantic*,
   131 F.3d 1336 (9th Cir. 1997) ............................................................. 11

*Flake* v. *Medline Indust., Inc.*,
   882 F. Supp. 947 (E.D. Cal. 1995) ................................................... 1, 11

*Graves* v. *Pikulski*,
   115 F. Supp. 2d 931 (D. Ill. 2000) ........................................................ 8

*Hopkinson* v. *Lotus Dev. Corp.*,
   1995 WL 381888 (N.D. June 20, Cal. 1995) ......................................... 9

*Hotmail Corp.* v. *Van$ Money Pie Inc.*,
   1998 WL 388389 (N.D. Cal. April 16, 1998) ....................................... 10

*Hugel* v. *Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ............................................................. 5, 6

*Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) .................................................................. 5

*Kilgallen* v. *Network Solutions, Inc.*,
   99 F. Supp. 2d 125 (D. Mass. 2000) ..................................................... 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lauro Lines v. Chasser*
   490 U.S. 495 (1989) ................................................................ 8

*Manetti-Farrow, Inc.* v. *Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) ............................................ 7, 8

*Murphy* v. *Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th  Cir. 2004) ......................................... 7, 8

*Pelleport Investors, Inc.* v. *Budco Quality Theatres, Inc.*,
   741 F.2d 273 (9th Cir. 1984) ............................................... 5

*Scherk* v. *Alberto-Culver Co.*,
   417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) .................... 10

*Spradlin* v. *Lear Siegler Mgmt. Servs. Co.*,
   926 F.2d 865 (9th Cir. 1991) ............................................... 8

*TAAG Linhas Aereas de Angola* v. *Transamerica Airlines, Inc.*,
   915 F.2d 1351 (9th Cir. 1990) ............................................. 5

*Weingrad* v. *Telepathy, Inc.*,
   2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ................................... 8

## STATE CASES

*Barnett* v. *Network Solutions, Inc.*,
   38 S.W.3d 200 (Tex. App. 2001) ....................................... 8, 9

*Net2Phone, Inc.* v. *Super. Ct.*,
   109 Cal. App. 4th 583 (2003) ............................................ 10

*Network Solutions, Inc.* v. *Umbro Int'l, Inc.*,
   259 Va. 759, 529 S.E.2d 80 (2000) ........................................ 2

## FEDERAL STATUTES

28 U.S.C. §§ 1332(d) ..................................................... 11, 12

28 U.S.C. §§ 1406(a) .................................................. 1, 11, 12

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) .............................................. 1, 4, 5, 6

Fed. R. Civ. P. 12(b)(3) .............................................. 1, 4, 5, 6

## I.   **INTRODUCTION AND SUMMARY OF ARGUMENT**

Network Solutions, LLC ("Network Solutions") is a Web services company, providing domain name registrar, email, Web hosting, and related services to customers around the world.  All Network Solutions customers, including Plaintiffs McElroy and Matzke, are required to agree to the terms of the Network Solutions service agreement (the "Service Agreement").  The Service Agreement specifically and clearly provides for *exclusive* venue and subject matter jurisdiction in the courts of Virginia.  Accordingly, this case should be dismissed.

Plaintiffs McElroy and Matzke, neither of whom are citizens of California, have brought claims for fraudulent concealment and unjust enrichment against defendant Network Solutions, a Virginia citizen.  Plaintiffs' claims are all premised upon their allegation that they were harmed because they registered their domain names with Network Solutions and paid Network Solutions its standard registration fee of $34.99.  However, Plaintiffs ignore the fact that they expressly agreed to litigate against Network Solutions exclusively in Virginia when they agreed to the terms of the Service Agreement.

Forum selection clauses are uniformly upheld and broadly applied by the district courts; dismissal pursuant to Rule 12(b)(3) is routinely granted where the plaintiff initiates suit in the wrong forum.  Likewise, the Ninth Circuit has recognized that in cases, such as this, where the parties have agreed to exclusive subject matter jurisdiction, dismissal is appropriate pursuant to Rule 12(b)(1).  Indeed, district courts nationwide have enforced the very forum selection clause in Network Solutions' Service Agreement that is at issue in this case.  *See* Request for Judicial Notice ("RJN") Exhs. A-J.  Accordingly, Network Solutions respectfully requests this Court to dismiss this action as against Network Solutions, or in the alternative, transfer it to its proper venue in Virginia.[1]

---

[1] While cases are usually dismissed pursuant to Rule 12(b)(3), in the alternative they may be transferred pursuant to 28 U.S.C. § 1406(a).  *See Flake v. Medline Indust., Inc.*, 882 F. Supp. 947, 949-52 (E.D. Cal. 1995).  Network Solutions seeks

## II.          FACTS

### A.          Defendant Network Solutions and the Domain Name System

Network Solutions provides various Internet services, including services as a domain name registrar.  Declaration of Natalie Sterling ("Sterling Decl.") ¶ 2.  The Internet is a vast, international network of interconnected computers through which businesses and individuals can send nearly-instantaneous e-mail communications and can access other information of various kinds.  *Id.* ¶ 3.  In order for the Internet to function, each computer connected to it must have a unique numeric address, known as an Internet Protocol or "IP" address.  *Id.*  The use of IP addresses is the method by which one computer or network connected to the Internet can identify and exchange information with another.  *Id.*  Internet users can more readily remember a name (as opposed to a lengthy sequence of numbers composing an IP address).  *Id.*  The domain name system allows Internet users to associate unique "domain name" character strings, such as <domainname.com.>, with specific IP addresses.  *Id.*; *see also Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000).

Only authorized registrars, such as Network Solutions, may register domain names ending in <.com>, such as the domain names at issue.  *See* Sterling Decl. ¶ 4.  If a desired domain name is available, the registrant can enter into a commercial contract with the registrar to associate the desired domain name with the registrant's IP address.  *Id.*.  Network Solutions' standard fee to register a domain name for one year is $34.99.  *Id.*

Beginning in January 2008, Network Solutions implemented a customer protection measure ("CPM") on its storefront, which was designed to help protect customers from "front runners."  *Id.* ¶ 5.  Front runners are individuals who register domain names known to have been searched for, for the purpose of using them for profit and then selling them at inflated prices through aftermarket this remedy in the alternative.

OHS West:260448703.1

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

1   channels.  *Id.* ¶ 6.  Front runners may get access to "recently searched domains"

2   information through a number of different means, such as from Internet Service

3   Providers or by utilizing spyware.  *Id.*  Network Solutions' CPM was designed to

4   help protect its customers from front-running by temporarily holding, without

5   charge, searched-for domain names for a period of 4 days.  *Id.* ¶ 7.

6        **B.    Plaintiffs Agreed To The Terms of Network Solutions' Service**

7             **Agreement and Forum Selection Clause.**

8             When an individual or entity chooses to register a domain name with

9   Network Solutions, Network Solutions requires that the customer first agree to

10  Network Solutions' Service Agreement.  *Id.* ¶ 8, Exh. A.  As part of the registration

11  process, a customer is required to affirmatively "check" a box appearing on the

12  Network Solutions website immediately next to the following text:  "***I have read***

13  ***the Network Solutions Service Agreement and agree to its terms***."  *Id.* ¶ 9, Exh. B.

14  If the customer fails to check this box, the transaction cannot proceed and the user

15  will not be able to register his desired domain name with Network Solutions.  *Id.* ¶

16  10 & Exh. C.

17             The Network Solutions' Service Agreement specifically provides that:

18             You and we each agree to submit to ***exclusive subject matter***

19             ***jurisdiction***, personal jurisdiction ***and venue*** of the United

20             States District Court for the Eastern District of Virginia,

21             Alexandria Division for any disputes between you and Network

22             Solutions ***under, arising out of, or related in any way to this***

23             ***Agreement*** (whether or not such disputes also involve other

24             parties in addition to you and Network Solutions).  If there is no

25             jurisdiction in the United States District Court for the Eastern

26             District of Virginia, Alexandria Division, for any such disputes,

27             you and we agree that exclusive jurisdiction and venue shall be

28             in the courts of Fairfax County, Fairfax, Virginia.

- 3 -

1   *Id.* ¶ 11, Exh. A ¶ 21 (emphasis added).

2   This forum selection clause is a critical part of Network Solutions'

3   business. *Id.* ¶ 12. Network Solutions provides domain name registration services

4   for more than seven million domain names registered to millions of customers in

5   more than 200 countries throughout the world. *Id.* Without a forum-selection

6   clause, Network Solutions could potentially be subject to suit anywhere in the

7   world. *Id.* The cost of defending such lawsuits in so many different forums would

8   be prohibitive. *Id.* The forum selection clause also avoids wasting judicial

9   resources to establish proper venue.

10   The clause appoints Virginia as the appropriate, agreed-upon forum

11   because documents and witnesses relevant to any action involving Network

12   Solutions are located mostly, if not entirely, in Virginia. *Id.* ¶ 13. Network

13   Solutions' principal place of business is located in Virginia. *Id.* All of Network

14   Solutions' registrar services are provided in Virginia. *Id.* Similarly, Network

15   Solutions' servers, which are used to perform registrar services for its customers,

16   are located in Virginia. *Id.*

17   Plaintiffs allege that they each registered domain names with Network

18   Solutions after searching for the availability of the domain names in late January

19   2008. First Amended FAC ("FAC") ¶¶ 31-40. In doing so, each of them affirmed

20   that he had read the terms of the Service Agreement and expressly agreed to them.

21   Sterling Decl. ¶ 14.

### III.   **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(3) DUE TO IMPROPER VENUE.**

#### A.   **Rule 12(b)(3) Mandates Dismissal.**

25   A motion to dismiss for "improper venue" based on a forum selection

26   clause is governed by Rule 12(b)(3). *Argueta v. Banco Mexicano,* 87 F.3d 320, 324

27   (9th Cir. 1996). In determining a Rule 12(b)(3) motion, the Court may consider

28   facts outside the pleadings and is not required to presume the allegations in the

- 4 -

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

pleadings to be true.  *Id.*  When parties to a contract designate a forum in which to litigate disputes, litigation commenced elsewhere is subject to dismissal.[2]  *See*, *e.g.*, *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353-55 (9th Cir. 1990) (affirming dismissal based on forum selection clause). Where, as here, the parties agree to "exclusive jurisdiction" through a mandatory forum selection clause, courts in other forums should refuse to exercise jurisdiction over the actions between them.  *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275, 279-81 (9th Cir. 1984); *cf. Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (comparing mandatory versus permissive forum selection clauses).  Thus, when an action is filed in a venue other than the one designated in a forum selection clause, the case should be dismissed pursuant to Rule 12(b)(3).  *Argueta,* 87 F.3d at 324.

## B. Plaintiffs' Claims All Fall Within The Scope Of The Forum Selection Clause.

The Service Agreement, which Plaintiffs (and each member of the purported class) expressly agreed to clearly provides that "any disputes between [plaintiff] and Network Solutions ***under, arising out of, or related in any way to this Agreement*** (whether or not such disputes also involve other parties in addition to [plaintiff] and Network Solutions)" shall be brought in Virginia.  Sterling Decl. ¶ 11, Exh. A (emphasis added).  Courts apply such forum selection clauses broadly and routinely find that they encompass tort claims which are related to the parties' contractual relationship.  For instance, in *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* the court found that the forum selection clause governed related tort claims, including a claim for misrepresentation.  *Coastal Steel Corp. v. Tilghmann Wheelabrator, Ltd.,* 709 F.2d 190, 192, 203 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989); *see also Hugel v.*

---

[2] Federal law governs the validity of a forum selection clause for purposes of a Rule 12(b)(3) motion.  *See Argueta v. Banco Mexicano*, 87 F.3d 320, 324 (9th Cir. 1996).

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

*Corp. of Lloyd's*, 999 F.2d 206, 208-09 (7th Cir. 1993) (holding that a forum selection clause in the parties' membership agreement extended to non-contractual claims because these claims would not have arisen but for plaintiff's status as a member of defendant); *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, 2002 WL 413463 at *4 (N.D. Cal. Mar. 12 2002) (holding that plaintiffs' non-contractual statutory and tort claims, including a claim for misrepresentation, were within the scope of the forum selection clause because they related to defendant's performance under the contract), *rev'd on other grounds*, 328 F.3d 528 (9th Cir. 2003).

Indeed, district courts in California have enforced the exact same forum selection clause at issue here with respect to tort claims brought by Network Solutions customers. For example, in granting Network Solutions' Rule 12(b)(3) motion, Judge White of the Northern District of California found:

> Although it is true that Plaintiffs have not asserted a breach of contract claim, *the claims do arise out of his status as one of Network Solutions' customers and relate to* services provided by and *representations made by Network Solutions to him*, thus implicating their contractual relationship. . . . Further, the forum selection clause applies to disputes "under, arising out of, or related in any way to this Agreement," which suggests that the forum selection was intended to be applied broadly. . . . Accordingly, the Court finds that Plaintiffs' claims fall within the scope of the forum selection clause.

RJN Exh. A, at 7-8 (*Doe v. Network Solutions, LLC*, Case No. CV 07-05115, Order Granting Mot. to Dismiss, entered January 22, 2008) (emphasis added).

Similarly, Judge Wilson of the Central District of California enforced the same forum selection clause and dismissed Network Solutions from a case alleging claims for negligence, conversion, and fraud, even absent a breach of contract claim. *See* RJN Exh. B, at 4-6 (*Bader v. Int'l Vacations, Ltd.*, Case No. CV 05-6958, Order Granting Mot. to Dismiss, entered Sept. 18, 2006). Judge

1   Wilson reasoned that plaintiff's claims flowed from his alleged "right to own the
2   domain name [which] flows directly from the Network Solutions Service
3   Agreement." *Id.* at 5.  Thus, he found that tort claims are governed by the forum
4   selection clause in the Service Agreement and dismissed the case for improper
5   venue.  *Id.*

6          In the case at bar, Plaintiffs allege tort claims (for fraudulent concealment
7   and unjust enrichment), all of which inextricably arise out of and are related to the
8   Service Agreement.  The crux of Plaintiffs' claims is their allegation that they
9   registered their domain names with Network Solutions only because the domain
10  name was being held for 4 days, due to the Customer Protection Measure.  *See* FAC
11  ¶¶ 31-40.  Likewise, the purported class consists of only people who searched for
12  and purchased (*i.e.,* registered) the same domain name from Network Solutions.
13  FAC ¶ 41.  In order to register a domain name with Network Solutions, the
14  customer must agree to the terms of the Service Agreement.  Sterling Decl. ¶¶ 9-10,
15  Exhs. B-C.  Thus, Plaintiffs' registration of the domain names with Network
16  Solutions and their agreement to the terms of the Service Agreement are
17  indispensable to their claims.  Had Plaintiffs not registered with Network Solutions
18  (and agreed to the Service Agreement), they would have no case.  Plaintiffs' claims
19  fall squarely within the ambit of the forum selection clause, and this case should be
20  dismissed.

21      **C.      The Forum Selection Clause Is Valid and Enforceable.**

22              **1.      Federal Law *Presumes* Forum Selection Clauses to be Valid**
23              **and Strongly Favors Their Enforcement.**

24              It is well-settled that forum selection clauses are *prima facie* valid and
25  should be honored as a matter of course "absent some compelling and
26  countervailing reason."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th
27  Cir. 2004) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see*
28  *also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.

OHS West:260448703.1

1988).  Because there is a "strong presumption in favor of enforcing forum selection clauses," the plaintiff bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy*, 362 F.3d at 1138-41. Plaintiff must show that the agreed-to forum must be "so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of his day in court."  *See Bremen*, 407 U.S. at 18; *Manetti-Farrow*, 858 F.2d at 515.

Plaintiffs in the case at bar cannot show that the forum selection clause should not be enforced.  Indeed, courts across the country have enforced language similar to or identical to that in the Service Agreement.[3]

## 2.   Plaintiffs Cannot Meet the Heavy Burden of Showing that an Exception Applies.

### a.   Enforcement of the Forum Selection Clause is Not Unjust.

In order to show that the forum selection clause should not be enforced because it is unjust, Plaintiffs must show that litigating in Virginia would be so "gravely difficult" that they would be deprived of their day in court.  *See Bremen*, 407 U.S. at 18; *Manetti-Farrow*, 858 F.2d at 515; *see also Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991) (holding that the *Bremen* analysis applies to simple contracts and enforcing a forum selection clause appointing Saudi Arabia as the agreed-upon forum).  This he cannot do.

Network Solutions' forum selection clause is far from unreasonable or unjust.  Rather, it represents an appropriate business method commonly employed by national and international companies to contain litigation costs — a method that has been repeatedly blessed by the courts.  As the Supreme Court recognizes, a

---

[3] *See* RJN Exhs. C-F (*Kilgallen v. Network Solutions, Inc.*, 99 F. Supp. 2d 125, 129 (D. Mass. 2000); *Graves v. Pikulski*, 115 F. Supp. 2d 931, 934-35 (D. Ill. 2000); *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645 at *2-5 (S.D.N.Y. Nov. 7, 2005); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203-04 (Tex. App. 2001)).

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

business that serves clients in many locations, such as Network Solutions, "has a special interest in limiting the for a in which it potentially could be subject to suit." *Carnival Cruise Line, Inc. v. Shute*, 499 U.S. 585, 593, 11 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (finding that a non-negotiated forum selection clause included in a form contract may be enforced even if it was not the subject of bargaining). The courts also benefit because forum selection clauses conserve judicial resources by avoiding the need for pretrial motions to determine the correct forum. *Id.* at 593-94; *see also Hopkinson v. Lotus Dev. Corp.*, 1995 WL 381888 at *1-3 (N.D. Cal. June 20, 1995).

The court in *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200 (Tex. App. 2001) specifically applied these principles to the exact same forum selection clause that is at issue in the case at bar. *See* RJN Exh. C. The *Barnett* court recognized that Network Solutions, Inc.[4] "received more than 6,000,000 registration applications from throughout the world." *Id.* at 204. Absent a forum selection clause, it "could be sued in forums throughout the world." *Id.* Network Solutions therefore has legitimate reason to employ a forum selection clause in its agreements. *Id.*

Moreover, Plaintiffs cannot show that enforcing the forum selection clause would deprive them of their day in court. Plaintiffs certainly can litigate this action in a forum different from where they live. In fact, Plaintiffs are doing so now. Plaintiff McElroy is a citizen of Florida and Plaintiff Matzke is a citizen of Minnesota. FAC ¶¶ 6-7. Further, even if this case could proceed as a class action, which Network Solution denies, the purported class is a nationwide class and there is no reason such a class action could not proceed in a Virginia court.[5]

---

[4] Network Solutions, Inc. was the predecessor of defendant Network Solutions, LLC. Pursuant to a November 2003 sale by Verisign of its registrar assets, all Service Agreements were transferred to Network Solutions, LLC.

[5] Moreover, because the purported class consists of only persons who "purchased" (*i.e.,* registered) the domain name from Network Solutions, each member of the purported class necessarily agreed to litigate any claims in Virginia. FAC ¶ 41; Sterling Decl. ¶¶ 9-10 Exhs. B-C.

- 9 -

Accordingly, the forum selection clause should be enforced and this case should be dismissed.

### 3.     The Forum Selection Clause was Not Obtained by Fraud.

Plaintiffs also cannot meet their burden of proving that the forum selection clause was obtained as a result of fraud.  The Supreme Court has made it clear that a forum selection clause is not rendered unenforceable "any time a dispute arising out of a transaction is based upon an allegation of fraud."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974).  Rather, a forum selection clause may be unenforceable only if the inclusion of the forum selection clause, specifically, was the product of fraud.  *Id.*; *see also Batchelder v. Kawamoto,* 147 F.3d 915, 919 (9th Cir. 1998) (acknowledging that "[t]he Supreme Court has noted that simply alleging that one was duped into signing the contract is not enough . . . .  For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'"  (citation omitted)).

Although Plaintiffs allege a count for fraudulent concealment, they do not specifically allege that the inclusion of the forum-selection clause in the Service Agreement was the product of fraud.  Nor can they.  In order to register a domain name with Network Solutions, the key fact upon which Plaintiffs' claims are predicated, Plaintiffs were required to affirmatively agree to the terms of the Service Agreement by "clicking" on a box.  Sterling Decl. ¶¶ 9-10, Exhs. B-C.  Courts nationwide have recognized the validity and enforceability of such "click-wrap" agreements, and in particular the forum selection clauses included in such agreements.  *See, e.g., DeJohn v. The TV Corp. Int'l,* 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003); *Hotmail Corp. v. Van$ Money Pie Inc.*, 1998 WL 388389 at *2-6 (N.D. Cal. April 16, 1998); *Net2Phone, Inc. v. Super. Ct.*, 109 Cal. App. 4th 583, 588-89 (2003).  Indeed, California district courts have enforced this very forum-selection clause in matters where the plaintiff alleged fraud.  *See*, *e.g.*, RJN Exh. B.

MEMO OF PS & AS IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

## IV.   THE COURT SHOULD ALSO DISMISS THE CASE DUE TO LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1).

In the Service Agreement, the parties agreed not just to exclusive venue but also to *exclusive subject matter jurisdiction* in the Eastern District of Virginia.  Sterling Decl. ¶ 11, Exh. A ¶ 21 (emphasis added).  Specifically, the parties agreed "to submit to exclusive subject matter jurisdiction, personal jurisdiction and venue" in Virginia.  *Id.*  The Ninth Circuit has repeatedly held that a case should be dismissed for lack of subject matter jurisdiction where, as here, the parties agree to exclusive subject matter jurisdiction in a different forum.  *See*, *e.g.*, *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1337-40 (9th Cir. 1997) (reversing the district court's refusal to grant defendant's motion to dismiss based on lack of subject matter jurisdiction due to a forum selection clause in which the parties agreed to exclusive subject matter jurisdiction in Korea); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989) (affirming dismissal for lack of subject matter jurisdiction where a forum selection clause provided for exclusive subject matter jurisdiction and venue in Virginia).  Accordingly, this Court should dismiss this action because Plaintiffs (and all putative class members) agreed to *exclusive* subject matter jurisdiction in Virginia.

## V.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO VIRGINIA.

If the Court determines that venue is improper based on the terms of the Service Agreement, it should dismiss the action or, if the interests of justice so require, transfer the case to any district in which it could have been originally brought.  28 U.S.C. § 1406(a); *Flake v. Medline Indust., Inc.*, 882 F. Supp. 947, 949-52 (E.D. Cal. 1995).  Plaintiffs purport that federal courts have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(d).  FAC ¶ 11.  Accordingly, if the Court declines to dismiss this action, Network Solutions requests that the Court transfer

1    this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a).

2    **VI.    <u>CONCLUSION</u>**

3      Plaintiffs each expressly agreed to litigate claims against Network

4    Solutions *only* in Virginia.  Indeed, Virginia is a proper forum; and Plaintiffs

5    themselves are not citizens of California, but rather of Florida and Minnesota.

6    Moreover, Plaintiffs each agreed that the courts of Virginia would have ***exclusive***

7    subject matter jurisdiction over the alleged claims.  Thus, for the foregoing reasons,

8    Network Solutions respectfully requests that the Court dismiss or, alternatively,

9    transfer this action.

10   Dated:  June 2, 2008    D. BARCLAY EDMUNDSON
                                                   VALERIE M. GOO
11                                                 SETH E. FREILICH
                                                   DIMITRIOS V. KOROVILAS
12                                                 Orrick, Herrington & Sutcliffe LLP

13

14                   /s/ Valerie M. Goo
                                          _____
15                                                 VALERIE M. GOO
                                                   Attorneys for Defendant
16                                                 Network Solutions, LLC

17

18

19

20

21

22

23

24

25

26

27

28